Archer-Vail v LHV Precast Inc. (2022 NY Slip Op 06048)

Archer-Vail v LHV Precast Inc.

2022 NY Slip Op 06048

Decided on October 27, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 27, 2022

533905
[*1]Patricia A. Archer-Vail, Individually and as Administrator of the Estate of John F. Vail, Deceased, Respondent,
v
LHV Precast Inc. et al., Defendants, and Wieser Concrete Products, Inc., et al., Respondents, and Spillman Company, Appellant.

Calendar Date:September 13, 2022

Before:Garry, P.J., Egan Jr., Clark, Fisher and McShan, JJ.

Catania, Mahon & Rider, PLLC, Newburgh (Jeffrey S. Sculley of counsel), for appellant.
Pollack, Pollack, Isaac & DeCiccio, LLP, New York City (Jillian Rosen of Marc J. Bern & Partners, LLP, New York City, of counsel), for Patricia A. Archer-Vail, respondent.
Salmon Ricchezza Singer & Turchi, LLP, New York City (Jeffrey A. Segal of counsel), for Wieser Concrete Products, Inc. and another, respondents.

McShan, J.
Appeal from an order of the Supreme Court (Christopher E. Cahill, J.), entered February 19, 2021 in Ulster County, which denied a motion by defendant Spillman Company to dismiss the complaint against it.
The facts of this dispute are more fully set forth in our prior decision involving these parties (168 AD3d 1257 [3d Dept 2019]). Briefly, plaintiff is the administrator of the estate of her spouse, John F. Vail (hereinafter decedent), who suffered grievous injuries and ultimately died after a 2,500 pound bridge form fell on him during the course of his employment at a construction site in Ulster County. Defendant Spillman Company — a nondomiciliary whose principal place of business was in Ohio — manufactured the subject bridge form, which it had sold to another Ohio company 13 years prior to the accident. Defendant Weiser Concrete Products, Inc. and defendant Weiser Concrete Roxana, LLC are concrete manufacturing contractors and defendant LHV Precast Inc. was the alleged operator of the construction site in which the accident took place. As relevant here, plaintiff seeks damages from Spillman based upon allegations that, "while operating outside the state, Spillman launched a force or instrument of harm by negligently designing, creating, supplying and distributing to customers a defective nesting diagram depicting how to load and unload a bridge form on and off of a flatbed trailer and that such negligence caused decedent's injuries" in New York (id. at 1261).
Spillman previously moved to dismiss the complaint against it for, among other things, lack of personal jurisdiction (see CPLR 3211 [a] [8]). Supreme Court denied its motion pending further discovery on the issue of whether plaintiff could obtain personal jurisdiction pursuant to CPLR 302 (a) (3) and, on appeal, we affirmed (168 AD3d at 1261-1262). After the parties completed discovery on the issue of jurisdiction, Spillman again moved to dismiss the complaint for lack of personal jurisdiction and plaintiff and the Weiser defendants opposed. Supreme Court denied Spillman's motion, and Spillman appeals.
We affirm. The party seeking to assert personal jurisdiction bears the burden of proof to establish that jurisdiction is proper (see State of New York v Vayu, Inc., 195 AD3d 1337, 1338 [3d Dept 2021]; Sacco v Reel-O-Matic, Inc., 183 AD3d 567, 568 [2d Dept 2020]). "[A] New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process" (Williams v Beemiller, Inc., 33 NY3d 523, 528 [2019]; see LaMarca v Pak-Mor Mfg. Co., 95 NY2d 210, 214 [2000]; Andrew Greenberg, Inc. v Sirtech Can., Ltd., 79 AD3d 1419, 1420 [3d Dept 2010]). As relevant here, CPLR 302 (a) (3) (ii) confers jurisdiction over a nonresident tortfeasor for tortious acts committed without the state that cause injury to a person or property in the state, provided [*2]that the plaintiff can "demonstrate that the nonresident tortfeasor: (1) 'expects or should reasonably expect the act to have consequences in the state'; and (2) 'derives substantial revenue from interstate or international commerce'" (Ingraham v Carroll, 90 NY2d 592, 598 [1997], quoting CPLR 302 [a] [3] [ii]).
Turning first to the statutory requirements, we find that plaintiff submitted sufficient evidence to establish that jurisdiction comports with the requirements of CPLR 302 (a) (3) (ii).[FN1] The evidence submitted in opposition to Spillman's motion establishes that Spillman availed itself of the interstate market, including New York, via an interactive website that allowed customers to order various products and custom designs tailored to an individual customer's needs. Spillman's website highlighted its sales to various interstate customers, including a prior New York customer who provided testimonials about Spillman's products and whose website was directly accessible utilizing a link from Spillman's website. The website also contains contact information for its employees to work with customers, including those from New York, on ordering custom-designed forms. Moreover, Spillman's responses to plaintiff's jurisdictional interrogatories further establish that the New York market was a significant part of Spillman's total business for the three-year period beginning with the year the accident took place through its final year in business. In 2016, Spillman's New York sales amounted to $398,166.42 constituting 6.0% of its total sales, and in 2017, those sales were $334,316.88, which constituted 4.2% of its total sales. Finally, through three quarters of the 2018 fiscal year, Spillman's New York sales rose to $428,980.33 constituting 7.8% of its total sales, a figure that exceeded the percentage of overall sales generated in its home jurisdiction of Ohio. To this end, from 2016 through 2018, the percentage of Spillman's total sales that were derived from its business in Ohio slowly decreased from a high of 11.8% to 7.5%, evidencing that a substantial portion of its total sales flowed from the interstate market.
In connection with its efforts to sustain a market in this state, the affidavits of Spillman's employees further establish that it sold its products to purchasers located throughout the United States, but primarily conducted business "east of the Mississippi River, including New York." In addition, the affidavit of Spillman's engineering manager acknowledged that Spillman's bridge forms would be repeatedly shipped by its purchasers to various construction sites across the country, and that the life span of the bridge forms "could be up to 25 years." Altogether, it is evident that Spillman derived substantial revenue from interstate commerce and "that it should have reasonably expected that the design, creation, supply and distribution of the nesting diagram that accompanied its bridge forms could have consequences in this state" (Archer[*3]-Vail v LHV Precast Inc., 168 AD3d at 1262; see Ingraham v Carroll, 90 NY2d at 598-599; Napolitano v Mastic Bicycles & Fitness Co., 279 AD2d 461, 462 [2d Dept 2001]; see also Gonzales v Calorific Co., 64 Misc 2d 287, 290-291 [Sup Ct, Queens County 1970], affd 35 AD2d 720 [2d Dept 1970]; compare Grandelli v Hope St. Holdings, LLC, 176 AD3d 922, 923 [2d Dept 2019]).
As to the constitutional requirements, "[f]ederal due process requires first that a defendant have 'minimum contacts' with the forum state such that the defendant should reasonably anticipate being haled into court there, and second, that the prospect of having to defend a suit in New York comports with traditional notions of fair play and substantial justice" (D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d 292, 300 [2017] [internal quotation marks and citation omitted]; see World-Wide Volkswagen Corp. v Woodson, 444 US 286, 297 [1980]; International Shoe Co. v Washington, 326 US 310, 316 [1945]; Darrow v Hetronic Deutschland, 119 AD3d 1142, 1145 [3d Dept 2014]). "A non-domiciliary tortfeasor has minimum contacts with the forum [s]tate — and may thus reasonably foresee the prospect of defending a suit there — if it purposefully avails itself of the privilege of conducting activities within the forum [s]tate" (LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 216 [internal quotation marks and citations omitted]; see City of Utica v Mallette, 200 AD3d 1614, 1615 [4th Dept 2021]). Further, it is well established that the suit must "arise[] out of or relate[] to the defendant's contacts with the forum state" (English v Avon Prods., Inc., 206 AD3d at 406; see Bristol-Myers Squibb Co. v Superior Ct. of California, San Francisco County, ___ US ___, ___, 137 S Ct 1773, 1780 [2017]; Daimler AG v Bauman, 571 US 117, 127 [2014]).
Spillman insists that the sale of the subject bridge form to an Ohio company and its resulting presence in New York cannot form the basis for jurisdiction, as it would be predicated merely upon a third party's contact with this forum rather than its own connections, which were unrelated to the subject bridge form. However, due process does not require a strict causal link between the specific product that caused harm and the defendant's forum contacts (see Ford Motor Co. v Montana Eighth Jud. Dist. Ct., ___ US ___, ___, 141 S Ct 1017, 1026 [2021]; see also Matter of New York City Asbestos Litig., 206 AD3d 442, 443 [1st Dept 2022]). "Rather, the causal link or relatedness between the defendant's activities and the plaintiff's claims requires only that there be a 'relationship among the defendant, the forum and the litigation'" (English v Avon Prods., Inc., 206 AD3d at 406, quoting Keeton v Hustler Magazine, Inc., 465 US 770, 775 [1984]; D & R Global Selections, S.L. v Bodega Olegario Falcon Pineiro, 29 NY3d at 298-299). Thus, when a corporation cultivates a market for its product in a state and that product malfunctions there, jurisdiction is appropriate regardless [*4]of where the product was sold, designed or manufactured (see Ford Motor Co. v Montana Eighth Jud. Dist. Ct., 141 S Ct at 1030).
Here, the record firmly establishes that Spillman purposefully forged its ties with New York by actively marketing its products, including bridge forms, to New York consumers and, as a result of its efforts, generated a significant percentage of its total sales from the New York market (see Keeton v Hustler Magazine, Inc., 465 US at 774; LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 217; English v Avon Prods., Inc., 206 AD3d at 407; Sacco v Reel-O-Matic, Inc., 183 AD3d at 568; compare Walden v Fiore, 571 US 277, 289-291 [2014]; Williams v Beemiller, Inc., 33 NY3d at 530). Further, there is a clear relationship between Spillman's systematic contacts with the New York market and the claims in this case alleging that one of the types of products that Spillman marketed and sold in this state contributed to decedent's injuries and death (see Ford Motor Co. v Montana Eighth Jud. Dist. Ct., 141 S Ct at 1028-1030; Rushaid v Pictet & Cie, 28 NY3d 316, 329-330 [2016]). Consequently, because "there is a strong 'relationship among [Spillman], the forum, and the litigation,'" the exercise of personal jurisdiction comports with federal due process requirements (Ford Motor Co. v Montana Eighth Jud. Dist. Ct., 141 S Ct at 1028, quoting Helicopteros Nacionales de Colombia, S.A. v Hall, 466 US 408, 414 [1984]; see LaMarca v Pak-Mor Mfg. Co., 95 NY2d at 217; English v Avon Prods., Inc., 206 AD3d at 407-408). Accordingly, Supreme Court properly denied Spillman's motion to dismiss on jurisdictional grounds.
Garry, P.J., Egan Jr., Clark and Fisher, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: In opposition to Spillman's motion, plaintiff also contended that jurisdiction was appropriate pursuant to CPLR 302 (a) (3) (i). The parties have not addressed that contention on this appeal and, in any event, we need not reach that argument in light of our determination that jurisdiction is appropriate pursuant to CPLR 302 (a) (3) (ii) (see English v Avon Prods., Inc., 206 AD3d 404, 408 [1st Dept 2022]).